**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **JEROME HUTCHINS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:13-CV-72 (MTT)** |
| ) | |
| **BIBB COUNTY SCHOOL DISTRICT,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>ORDER</u>

This matter is before the Court on the Parties' cross-motions for summary
judgment.  (Docs. 13, 14).  The Plaintiff did not file any response to the Defendant's
motion.  Thus, the facts set forth by the Defendant in its statement of material facts
(Doc. 14-1) are admitted.  M.D. Ga. L.R. 56.  The Court has also reviewed the record
and finds the facts undisputed.  For the reasons discussed below, the Plaintiff's motion
is **DENIED**, and the Defendant's motion is **GRANTED**.

## I.  FACTUAL BACKGROUND

In late September 2011, Plaintiff Jerome Hutchins, an African-American male,
was hired by Defendant Bibb County School District to work as a seventh grade math
teacher at Weaver Middle School.  (Doc. 14-1 at ¶ 4).  Hutchins was recommended for
this position by Dr. Pamela Carswell, the principal of Weaver.  (Doc. 14-1 at ¶ 5).
Hutchins previously worked at Bloomfield Middle School in the School District during the
2007-2008 and 2008-2009 school years.  (Doc. 14-1 at ¶ 1).  During that time, Hutchins
was enrolled in the Georgia Teacher Alternative Preparation Program to obtain his
temporary teaching certificate.  (Doc. 14-1 at ¶ 1).  At the end of the 2009 school year,

Hutchins's contract was not renewed because he had not passed the Georgia Assessments for the Certification of Educators test. (Doc. 14-1 at ¶ 1).

During the 2009-2010 school year, Hutchins worked at Thompson Middle School in the Houston County School District. (Doc. 14-1 at ¶ 2). His contract was not renewed at the end of that year. (Doc. 14-1 at ¶ 2). During the 2010-2011 school year, Hutchins worked at Randolph Clay Middle School in the Randolph County School District. (Doc. 14-1 at ¶ 3). That contract was not renewed either. (Doc. 14-1 at ¶ 3).

Teachers at Weaver Middle School were evaluated using the Georgia Teacher Evaluation Program. (Doc. 14-1 at ¶ 6). This program requires teachers to be informally and formally observed in the classroom, and formal observations are conducted using the Georgia Teacher Observation Instrument ("GTOI observation"). Dr. Carswell assigned Dr. Chad Thompson, an assistant principal at Weaver, to administer Hutchins's first formal GTOI observation on November 4, 2011. (Doc. 14-1 at ¶¶ 8-9). Dr. Thompson had previously conducted an informal evaluation of Hutchins's classroom, and Dr. Thompson believed Hutchins was not timely responding to disruptive behaviors among his students. (Doc. 14-1 at ¶¶ 10-11).

Dr. Thompson scored Hutchins with "needs improvement" in two areas, referred to as "teacher-focused" and "appropriate behavior," for the November 4 GTOI observation. (Doc. 14-1 at ¶ 12). Hutchins believes Dr. Thompson rated him as "needs improvement" because Dr. Thompson did not realize Hutchins was handling an urgent situation with a student, but Hutchins admits Dr. Thompson "was right about some things [he] could improve." (Doc. 14-1 at ¶¶ 13-14).

Following this observation, Dr. Carswell asked Dotty Taylor, a teacher support specialist, to work with Hutchins on the deficiencies identified by Dr. Thompson. (Doc. 14-1 at ¶ 16). Also subsequent to the observation, Dr. Thompson and Jimmie Montgomery, another assistant principal at the school, responded weekly, and eventually daily, to disruptive behaviors by students in Hutchins's classroom. (Doc. 14-1 at ¶¶ 17-19).

On December 14, 2011, Dr. Carswell, Dr. Thompson, and Montgomery met with Hutchins to discuss performance issues and the need for a Professional Development Plan. (Doc. 14-1 at ¶ 20). A development plan includes specific objectives for improvement, activities and a timeline for meeting those objectives, criteria for measuring progress, and a record of participation in the recommended activities. (Doc. 14-1 at ¶ 21). Dr. Carswell presented the plan to Hutchins during a meeting on January 24, 2012. The plan included a requirement that 70 percent of Hutchins's students meet or exceed standards on the Spring 2012 administration of the Criterion Referenced Competency Test ("CRCT") in math. (Doc. 14-1 at ¶ 22). Hutchins refused to sign or take a copy of the plan. (Doc. 14-1 at ¶ 23). While Hutchins stated he did not oppose the plan itself, he objected to the 70 percent criterion because 63 percent of the students failed to meet standards on the prior administration of the exam. (Doc. 14-6 at 65:20-66:3).

On January 25, a second meeting was held with Hutchins to explain the importance of the development plan, but he again refused to sign or take a copy of it. (Doc. 14-1 at ¶ 26). On January 27, Dr. Carswell, Dr. Thompson, Montgomery, and Dr.

Bertha Caldwell, an assistant superintendent for the School District, met with Hutchins a third time to discuss the plan, but Hutchins again refused to sign it. (Doc. 14-1 at ¶ 27).

Dr. Carswell requested that Lynn Janes, the coordinator of school improvement in mathematics, conduct an independent observation of Hutchins's classroom instruction on February 6, 2012.[1] (Doc. 14-1 at ¶ 28). Janes believed Hutchins was not properly disciplining his students and was giving them inconsistent instructions. (Doc. 14-1 at ¶ 29). Hutchins, however, contends he was merely conducting an "engaging" classroom. (Doc. 14-6 at 92:23-25). Janes sent an email containing her observation summary to Hutchins and Dr. Carswell, but Hutchins seemed unwilling to accept Janes's recommendations or to work with her to improve his classroom management. (Doc. 14-1 at ¶¶ 30-31).

A second GTOI observation was conducted by Dr. Carswell on February 13, 2012, and she gave Hutchins nine "needs improvement" marks. (Doc. 14-1 at ¶ 32). Dr. Carswell noted the "classroom environment was chaotic," "the physical setting of the classroom was messy," and Hutchins was not addressing inappropriate student behavior. (Doc. 14-3 at ¶ 21). Dr. Carswell also requested that Charles O'Cain, the math department chair at Weaver Middle School, work with Hutchins to improve his classroom instruction, but O'Cain reported back to Dr. Carswell that he was not making progress with Hutchins. (Doc. 14-3 at ¶ 25).

In advance of the deadline for issuing non-renewal decisions to teachers, the School District conducts a series of at-risk conferences to review documentation of

---

[1] Hutchins believes Dr. Carswell and Janes selected February 6, 2012, the date after the 2012 Super Bowl, for the observation because they knew teachers would not be organized the day after the Super Bowl, and they were engaged in a conspiracy to get rid of him. (Doc. 14-6 at 102:9-103:6).

performance issues and discuss the appropriateness of recommended non-renewal decisions.  (Doc. 14-1 at ¶ 34).  On February 27, 2012, Dr. Carswell met with Hutchins to inform him that he had been placed on the list of employees who would be considered for non-renewal during the at-risk committee meetings, and later that day she provided Hutchins with a written summary of their meeting.  (Doc. 14-1 at ¶ 41).  Dr. Carswell made this decision after determining "no additional amount of … instructional support or time for remediation was likely to improve [Hutchins's] classroom performance" and because of his "stubborn refusal to accept responsibility for responding to classroom behaviors … and to incorporate recommended, research-based strategies into his classroom instruction."  (Doc. 14-3 at ¶¶ 29-30).

A third GTOI observation was conducted by Montgomery on March 22, 2012. (Doc. 14-3 at ¶ 32).  Montgomery informed Dr. Carswell that some students in Hutchins's classroom were "excessively off task" and caused a distraction for the other students because Hutchins was not appropriately addressing the timely behavior.  (Doc. 14-3 at ¶ 33).  Although the third GTOI observation occurred after, and thus was not a factor in, Dr. Carswell's decision to place Hutchins on the recommended non-renewal list, Dr. Carswell stated the final observation reaffirmed her conclusion that Hutchins's performance was unlikely to improve over time.  (Doc. 14-3 at ¶ 34).

The at-risk committee agreed with Dr. Carswell's recommendation and submitted it to the School District's superintendent for his approval.  (Doc. 14-1 at ¶ 42).  The superintendent approved the recommendation, and Hutchins's contract with the School District was not renewed for the 2012-2013 school year.  (Doc. 14-1 at ¶ 42).  Hutchins

believes Dr. Carswell discriminated against him because he alleges white employees

with similar classroom management problems were treated more favorably.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment must be granted if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material facts and that the movant is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a

verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281

F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*,

941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove

that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp.*, 281 F.3d at

1224.  The party may support its assertion that a fact is undisputed by "citing to

particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other

materials."  Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must

establish all essential elements of the claim or defense in order to obtain summary

judgment."  *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing

*Four Parcels of Real Prop.*, 941 F.2d at 1438).  The moving party must carry its burden

by presenting "credible evidence" affirmatively showing that, "on all the essential

elements of its case on which it bears the burden of proof at trial, no reasonable jury

could find for the nonmoving party." *Four Parcels of Real Prop.*, 941 F.2d at 1438.  In other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict.  *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original).  However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. ... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 940, 952 (11th Cir. 1986)).

In contrast, "[w]hen the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show … that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1438 (internal quotation marks and citation omitted).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any

issue for which it will bear the burden of proof at trial." *Info. Sys. & Networks Corp.*, 281

F.3d at 1224-25 (citing *Celotex Corp.*, 477 U.S. at 324).

The standard of review for cross-motions for summary judgment does not differ

from the standard applied when only one party files a motion.[2]  *See Am. Bankers Ins.*

*Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  "Cross-motions for

summary judgment will not, in themselves, warrant the court in granting summary

judgment unless one of the parties is entitled to judgment as a matter of law on facts

that are not genuinely disputed."  *United States v. Oakley*, 744 F.2d 1553, 1555 (11th

Cir. 1984) (internal quotation marks and citation omitted).  The Court will consider each

motion on its own merits, resolving all reasonable inferences against the party whose

motion is under consideration.  *See Am. Bankers Ins. Grp.*, 408 F.3d at 1331.

### B. *McDonnell Douglas* Framework

A Title VII plaintiff may prove his case directly or circumstantially.  Here, there is

no direct evidence of discrimination, so Hutchins must rely on circumstantial evidence.

The framework for analyzing circumstantial evidence to establish a prima facie case of

discrimination is provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3]

---

[2] Hutchins previously moved for summary judgment, but the Court dismissed his motion without prejudice for its failure to comply with Fed. R. Civ. P. 56 and Local Rule 7.1.  (Doc. 12).  The Court also sent Hutchins a copy of the local rules.  Nevertheless, Hutchins has filed a second motion for summary judgment that fails to comply with Fed. R. Civ. P. 56 and Local Rule 7.1, and he asks the Court to excuse this failure because he is pro se.  Although courts liberally construe pro se pleadings, pro se plaintiffs are not excused from procedural rules.  *McNeil v. United States*, 508 U.S. 106, 113 (1993).  To the extent Hutchins is requesting appointment of counsel in his second motion, appointment of counsel is unwarranted because his claims are neither factually nor legally complex nor has he shown that exceptional circumstances exist justifying the appointment of counsel in a civil case.  *See Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

[3] The Court recognizes that establishing the *McDonnell Douglas* elements is not "the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A plaintiff can always avoid summary

Pursuant to *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination.  If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).  This burden of production means the employer "need not persuade the court that it was *actually* motivated by the proffered reasons" but must produce evidence to raise a genuine factual dispute as to whether it discriminated against the plaintiff.  *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (emphasis added) (citation omitted).

A plaintiff then has the opportunity to show that the employer's stated reason is in fact pretext for discrimination.  "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *Id.* (quoting *Burdine*, 450 U.S. at 256).  Put another way, "a plaintiff can survive a motion for summary judgment … simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons."  *Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 964-65 (11th Cir. 1997) (citations omitted).  Consequently, at this juncture it is not required that a plaintiff prove his employer was motivated by discriminatory intent.

---

judgment by creating a triable issue concerning the employer's discriminatory intent.  A plaintiff does this by presenting "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'"  *Id.* (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011)).  However, Hutchins has not presented such evidence and does not meet *Lockheed-Martin's* standard.

**C.  Racial Discrimination Claim**

Generally, Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  To establish a prima facie case of discrimination under Title VII, Hutchins must show: (1) he is a member of a protected class; (2) he was qualified for the position held; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class.  *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).  The School District does not dispute that Hutchins can satisfy the first, second, and third elements of his prima facie case.

Hutchins has not alleged he was replaced by a person outside his protected class.  However, Hutchins has identified Susan Hector and Elizabeth Wills, both Caucasian teachers at Weaver Middle School, as two similarly-situated individuals who were disciplined differently and treated more favorably than him.  To be a proper comparator, the employee outside the plaintiff's protected class must be "similarly situated in all relevant respects."  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted).  To determine whether employees are similarly situated, we evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (internal quotation marks and citations omitted).  "[T]he quantity and

quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (citation omitted).  In making this determination, courts must be mindful that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."  *Id.* at 1369 (internal quotation marks and citation omitted).  "[T]he most important factors in a comparator analysis in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed."  *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1281 (11th Cir. 2008) (citing *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001)).

Hector taught business and consumer science at Weaver during the 2011-2012 school year.  During the Spring 2012 administration of the CRCT, Hector was assigned as a text examiner, and Hutchins acted as a proctor.  (Docs. 14-1 at ¶ 47; 14-6 at 121:9-16).  Hector failed to comply with testing guidelines by using an e-reader during the test's administration, which Hutchins witnessed.  (Doc. 14-1 at ¶ 48).  Hutchins contends Hector was treated more favorably because the school's administration did not require her to participate in a development plan, and she was not terminated. Hector was, however, issued a letter of direction by Dr. Thompson for the infraction. (Doc. 14-4 at 4, 7).  Unlike Hutchins, Hector did not have any issues related to classroom management, and she did not receive any "needs improvement" marks during her GTOI observations.  (Doc. 14-1 at ¶ 50).  Hector's infraction occurred on one occasion, while Hutchins's classroom management problems were documented on multiple occasions.  Thus, Hector was not accused of similar conduct, and she is not a proper comparator.

Wills taught language arts at Weaver during the 2011-2012 school year.  Dr. Carswell conducted Wills's first GTOI observation on September 14, 2011 and gave her one "needs improvement" mark for classroom management.  (Doc. 14-1 at ¶ 52).  Like Hutchins, Wills was assigned to work with Taylor to improve her classroom management skills.  (Doc. 14-1 at ¶ 54).  Soon after her observation, however, Wills went on approved medical leave from October 5, 2011 through February 24, 2012. (Doc. 14-1 at ¶ 53).  Dr. Carswell did not consider submitting Wills's name to the at-risk committee because "she did not have an adequate opportunity to engage in remediation activities or to benefit from instructional support during the school year."  (Doc. 14-3 at ¶ 38).  Wills received three "needs improvement" marks during her second GTOI observation and was soon after placed on a development plan.  (Doc. 14-3 at ¶¶ 39, 40).

Thus, Hutchins and Wills had similar issues with their classroom management and were disciplined differently, but they were not similarly situated in all relevant respects.  Wills went on medical leave soon after her first GTOI observation and did not return until the last day for Dr. Carswell to submit names to the at-risk committee. Unlike Hutchins, Wills did not have the opportunity to work on a development plan or with teaching instructors prior to that deadline.  Further, the School District contends Wills "did not engage in the kind of insubordinate, uncooperative[,] and oppositional behavior that characterized [Hutchins's] tenure at Weaver Middle School."  (Doc. 14-2 at 15).

Even if Wills or Hector was a proper comparator and Hutchins had established a prima facie case of discrimination, the School District has offered legitimate,

nondiscriminatory reasons for terminating Hutchins.  The School District asserts
Hutchins's contract was not renewed because he: (1) refused to sign and accept his
development plan on three occasions; (2) failed to cooperate in the implementation of
the plan; and (3) dismissed recommendations by instructional support staff that were
intended to improve his overall performance.  Thus, the presumption of discrimination
has been rebutted, and Hutchins must show the School District's legitimate,
nondiscriminatory reasons are pretext.

As noted above, Hutchins may carry his burden of establishing the School
District's proffered reasons for his termination were pretextual "either directly by
persuading the court that a discriminatory reason more likely motivated the employer or
indirectly by showing that the employer's proffered explanation is unworthy of
credence."  *Burdine*, 450 U.S. at 256 (citing *McDonnell Douglas Corp.*, 411 U.S. at 804-
05).  The Court must consider "whether the plaintiff has demonstrated such
weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action that a reasonable factfinder could
find them unworthy of credence."  *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d
1276, 1289 (11th Cir. 2005) (internal quotation marks and citation omitted).  A plaintiff
can demonstrate evidence of pretext by identifying a defendant's inconsistent
statements, but the "mere denial of credibility" has no evidentiary value.  *Howard v. BP
Oil Co.*, 32 F.3d 520, 526 (11th Cir. 1994).  "[A] plaintiff withstands summary
adjudication by producing sufficient evidence to allow a reasonable finder of fact to
conclude that the defendant's articulated reasons for its decision are not believable."  *Id.*

Hutchins has produced no evidence to allow a reasonable factfinder to conclude the School District's proffered reasons are pretext.  Hutchins does not contest that he refused to sign the development plan or cooperate in its implementation, although he insists he was only delaying signing the plan until he had time to consider the condition requiring at least 70 percent of his students pass the CRCT.  Instead, Hutchins makes conclusory allegations that Weaver Middle School's administrators were conspiring against him and setting him up to fail.  Contrary to Hutchins's allegations, the School District has produced evidence that it attempted to provide Hutchins with remedial services to improve his classroom management on multiple occasions prior to its decision to submit his name for nonrenewal.  Hutchins had no problems with the plan and acknowledged it was designed for his benefit, but he refused to sign it only because he felt the 70 percent requirement was unreasonable.

The Court's job is only to evaluate the honesty of the School District's articulated reasons and not to "'second-guess [its] business judgment.'"  *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013) (alteration in original) (quoting *Chapman v. Al. Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)).  The School District has provided honest reasons for its decision to terminate Hutchins, and an employee's failure to participate in a development plan designed to improve his job performance could motivate a reasonable employer to terminate an employee.  Although Hutchins may disagree with the wisdom of the School District's requirement that at least 70 percent of his students pass the CRCT, he has not put forth sufficient evidence to show the School District's explanations are unworthy of credence.  Accordingly, the School District is entitled to summary judgment on Hutchins's Title VII discrimination claim.

-14-

### III.  Conclusion

For the foregoing reasons, the Plaintiff's motion for summary judgment is

**DENIED**, and the Defendant's motion for summary judgment is **GRANTED**.


**SO ORDERED,** this the 8th day of January, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT